## KAUFFMAN v. OLIVER.

An action at common law does not lie in this state for harbouring runaway slaves, or for aiding them to escape from their owners.

And the state courts have no jurisdiction under the acts of Congress on that subject: Per COULTER, J.

IN error from the Common Pleas of Cumberland.

The first count in the plaintiffs' declaration set forth, that they were owners of certain slaves held under the laws of Maryland; that the slaves escaped into Cumberland county, where the plaintiffs had the right to retake them; that the defendant, not being ignorant of the premises, but intending to deprive the plaintiffs of the services of said slaves, did entice, persuade, procure, aid, and assist them to escape from the plaintiffs' service, so as to prevent the plaintiffs retaking and reclaiming their said slaves—whereby they lost the service thereof, to the damage, &c.

The second count was, for aiding the slaves to escape.

Defendant pleaded that the courts of the United States had exclusive jurisdiction. To this plaintiffs demurred, and the court gave judgment for plaintiffs.

A trial was had on the other pleas, and bills of exceptions taken;

but, as the plea demurred to raised the only point decided here, it is deemed unnecessary to state the objections taken below.

*Gallagher* and *Stevens*, for plaintiff in error.—The act of Congress, of 1793, embraces all existing and known remedies respecting fugitive slaves. It allows recapture ; gives a penalty for obstructing the recapture, or for concealing the fugitive ; and a right of action for the value of the services. None of these are laid in the *narr.* As it was settled in 16 Pet. 540, that the state cannot legislate on the subject, it follows her courts have no jurisdiction. That there is no remedy at common law is decided, 2 McL. 596. And this would seem necessarily to follow from the decision, that the state cannot regulate the remedies of the owner seeking his property within her territory.

*Biddle,* contrà.—It is well settled that the courts may exercise jurisdiction under the acts of Congress, unless prohibited : 1 Kent, 399. An action lies at common law for seducing and harbouring a servant or slave : 13 John. 322. The act of Congress expressly saves this remedy. The right has always existed here : Reed's Prec. 77 ; Act 1780, § 11 ; 1 Bald. 571.

COULTER, J.—This action is instituted at common law, leans upon it for support, and invokes the aid of its principles to sustain its objects and results. The sweeping generality of the two counts in the declaration of the plaintiff, and the instruction of the court, would leave room to infer that Kauffman, the defendant, had proceeded to the state of Maryland, and there seduced the alleged slaves from their servitude, brought them to the state of Pennsylvania, and there concealed them, so that the owner could not reclaim or recapture them. This mode of stating the case, throws around it some air of plausibility, although it makes no difference in the application of the law, which the judgment of the court deems fit and suitable to control and decide it. But the testimony does in nowise warrant or authorize such general conclusions. [His honour stated it.]

But we turn to another aspect of the case : one which presents a question which concerns the sovereignty of the state—the independence of its tribunals, and the character of the common law— a question which overmasters all minor points presented on the record.

The defendant pleaded to the jurisdiction of the court.

Pennsylvania reverently acknowledges and clings to the compact of union, as declared in the constitution of the United States. Her

bright escutcheon of good faith to that compact will never be soiled by her courts, or tarnished by her people. That constitution recognises slavery in the states under whose municipal and local regulations it exists. But at the time of its adoption, it was a compromise of conflicting interests on many subjects, and on none more emphatically so than on the subject of slavery. Then Pennsylvania was a free state. In 1780, the legislature, in grateful commemoration of her then certain prospect of escaping from the house of bondage and the hand of the oppressor, and as the preamble to the act, recites, "in consequence thereof, being freed from the narrow prejudices which they had imbibed, and feeling their hearts enlarged with kindness and benevolence to men of all conditions and nations," abolished slavery within her borders as to all people thereafter born within her limits. From that time she has been deemed and taken as a free state, and as such assented to the compact of union.

Slavery, then, is recognised and enforced here by virtue of that compact alone. The voice of her own policy proclaims, so far shalt thou go, but no farther. The language of that compact is: "No person held to service in one state, under the laws thereof, escaping into another, shall, in consequence of any law or regulation therein, be discharged from such service or labour, but shall be delivered up on the claim of the party to whom such service or labour may be due." Upon claim made by the person to whom service is due, the fugitive shall be delivered up. To whom shall this claim be made? Undoubtedly to the person or persons who shall have the alleged slave in custody, or who shall attempt to protect him from the owner to whom the services are due. And as by the compact the slave is not discharged from his service by escaping into a free state, the owner or his authorized agent may pursue and take him, without riot or breach of the peace, by manucaption or reprisal, in any place where the compact is obligatory, just in the same manner as if the recaption was in the slave territory. Sovereignty is so far yielded by the free states, and so far the constitutional provision executes itself. But if the fugitive is harboured, protected, concealed, or enticed by any persons, the owner must make the claim in a legal manner and by legal process, according to the constitution and the laws of the United States. The mode, manner, and circumstance of such claims are fully set forth in the act of Congress of 1793, and the means of making such claims effectual are therein provided.

Congress has regarded this claim, to the service of the fugitive, as a right of property, and that is the only light in which it can

be viewed, and it must be made by one person or persons against another person or persons, properly, to be asserted in a court of justice. It is, therefore, a controversy between parties, arising under the constitution and laws of the United States, and must be referred to the forum having jurisdiction of such controversies. The Constitution of the United States declares, that the judicial power of the courts of the United States shall extend to all cases in law and equity, arising under the constitution and laws of the United States, &c. This cause of action, good or bad, is within the jurisdiction of the United States courts; for Congress has power to pass all laws necessary to make the claim efficacious and commensurate with the constitutional provision. But it must be done through the court over which Congress have power, and through their instrumentality; otherwise, the claim might be rendered abortive by the decisions of the state courts, pursuing their own local policy. The claim ought primarily to be asserted in courts whose decisions would conclude the subject of dispute, and not in a foreign forum, adverse to the whole process, if it pursued the feelings and policy of its own laws and the principles of the common law. The provisions of the act of Congress must be pursued in the tribunals of the United States. There they meet with no warfare by local legislation, or municipal peculiarities. And the person claiming the services of the fugitive is in the forum of that sovereignty and jurisdiction under which his claim is made. Within the terms of the compact, and within the act of Congress, we acknowledge the validity of the claim, when made in the proper forum. But, outside the compact, we breathe more freely. We feel the genial influence of the common law on this subject. The principle sprung fresh and beautiful and perfect from the mind of Lord Mansfield, in the great case of the negro Somersett, that, by the common law, a slave, of whatever country or colour, the moment he was on English ground, became free—endowed with sanctity of reason. This case was decided before the Revolution, and became the common law of this state, always saving and excepting the inroad of the compact and compromise. This action, then, professes to be founded on the principles of the common law. But, by the principles of that law, the fugitives were free the moment when they touched the soil of Pennsylvania. All the incidents, accompaniments, and attributes of bondage fell from around them. By that law, even persuading the fugitives to fly, would be no offence in Pennsylvania, whatever it might be in Maryland. But the act of Congress, in the third *section*, which

2 X

specifies the acts for which damages may be recovered, and the penalty incurred, does not mention that of inciting negroes to run away; and we must gather the mind and intent of the legislative power, as well from what they do not say, as from that which they do say.

It was ruled in the Circuit Court of the United States for the District of Ohio, that, if a slave escape to a free state, he is free according to the principles of the common law; and recapture in a free state, is justified only by the compact in the constitution and the act of Congress. And it was held in the same case, that damages.for harbouring and concealing a slave in a free state, are not recoverable at the common law: Vanzandt v. Jones, 2 McL. 596. It was also ruled in the same cause, that the saving in the 4th section of the act of Congress, of the owner's right of action, covered merely the same ground as that embraced by the acts for which the penalty is inflicted: that is, that the owner should be entitled to his action for damages, on account of the same acts for which the penalty is inflicted, but of course in the same forum.

So that the plaintiff here is unaided by that provision, upon which he placed some reliance. The damages are for the same injuries—arise under the same law as the penalty; and the action for the penalty might as well be sustained at the common law, as the action for the damages. Neither can be maintained outside of the act of Congress. I admit that a free-state, although not bound to enforce in its tribunals the slavery of another sovereignty, and thus render itself· subservient to the policy of another state, in opposition to its own; yet it may do so if it will. But it will be a matter of comity, and not as a matter of right or duty.

In the year 1826, the legislature of this state, for the purpose of aiding in the accomplishment of the compact to deliver fugitives when claimed, passed an act, enjoining upon state magistrates and judges, the duty of acting, and prescribing the manner in which the duty should be discharged. This act of comity was conceived in a just and fraternal spirit; only throwing around the fugitive some safeguards, to prevent *kidnapping* under colour of law. This act, however, was declared unconstitutional, by the Supreme Court of the United States, in the case of Prigg v. The Commonwealth of Pennsylvania, 16 Pet. 539, it which case it was resolved that the act was null and void; that Congress possesses the exclusive right to legislate on the subject, and that state legislatures have no right whatsoever. In short, it is fully held, that the power of Congress is adequate to all the emergencies of the subject, and if it has not

fulfilled them, it may, and perhaps will. This is the supreme law of the land on the subject. State legislatures are bidden back, as intruding into forbidden places. But it is intimated, that although state magistrates and judges are not compelled, that nevertheless they may act, if it is not contrary to the policy of the state. On this point, there is some divergence among the judges, but I have stated the opinion of the majority. Very well, so let it be. The policy of this state is indicated in the act of 1780, in the act of 1826, and in the feeling, and principles, and government of the state.

Under these circumstances, our courts are interdicted from assuming a voluntary jurisdiction, since the act of 1826 has been repudiated and thrown out of court, as the decisions of our tribunals might, and perhaps would be, if against the claim of the owner of the fugitives. After full consideration, this court is of opinion, that an action of this kind can only be sustained under the act of Congress of 1793; that our state courts have not jurisdiction of an action under the statute; and the principles of the common law do not sustain any such action in this state.

The plea to the jurisdiction is therefore sustained, and the judgment reversed.